UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DUANE BAUGHMAN, KATIE MERRILL, | * | |
| THE BAUGHMAN COMPANY, INC., | * | |
| d/b/a BAUGHMANMERRILL, and THE | * | |
| MERRILL STRATEGY GROUP, | * | |
| | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. 1:23-cv-11278-IT |
| | * | |
| PETRA CHRISTINA BETER and JOSEE | * | |
| MARIE BETER, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

October 11, 2024

TALWANI, D.J.

Plaintiffs Duane Baughman, Katie Merrill, and their companies, The Baughman

Company, Inc., d/b/a BaughmanMerrill (the "Company"), and The Merrill Strategy Group (the

"Merrill Group") bring this action for defamation and defamation *per se* (Count I) and tortious

interference with contractual relationship (Count III) against Defendant Petra Beter ("Beter") and

for tortious interference with prospective business advantage (Count II) and civil conspiracy

(Count IV) against Beter and her sister, Defendant Josee Marie Beter ("Josee Beter"). Plaintiffs

contend that Defendants "have engaged in a 20+ year smear campaign that has consisted of

repeated baseless, unsubstantiated, defamatory allegations that Plaintiff Baughman sexually

assaulted Defendant Beter (and others), and that Baughman's business partner, Plaintiff Merrill,

has helped cover it up." Compl. ¶ 1.

Pending before the court are Defendants' Motion to Strike Plaintiffs' Complaint Pursuant

to the California Anti-SLAPP Law ("Motion to Strike") [Doc. No. 31] and Defendants' Motion

to Stay Litigation, or in the Alternative, Dismiss Plaintiffs' Claims ("Motion to Strike" and

"Motion to Dismiss") [Doc. No. 33]. By electronic order [Doc. No. 57], the court denied the Motion to Strike and Motion to Stay, with this written decision to follow. For the following reasons, Defendants' Motion to Strike and Motion to Stay are DENIED and the Motion to Dismiss is GRANTED as to Counts Two and Four and DENIED as to Counts One and Three.

## I.    Plaintiff's **Complaint**

Plaintiffs filed their Complaint [Doc. No. 1] on June 6, 2023.

### A.    *The Factual Allegations as Set Forth in the Complaint*

#### 1.    General Background

Plaintiff Baughman has earned a reputation as a top direct-mail strategists and has been credited with engineering numerous Democratic primary victories for candidates throughout the United States. Compl. ¶ 3 [Doc. No. 1]. Similarly, Plaintiff Merrill is recognized as being one of California's most successful female and LGBT campaign managers and statewide consultants. Id. Both Baughman and Merrill are domiciled in California, and The Baughman Company and Merrill Strategy Group are California corporations with their principal places of business in California. Id. ¶¶ 16-19. Defendant Beter is believed to be a citizen of Massachusetts, and Defendant Josee Beter is believed to be a citizen of Minnesota. Id. ¶¶ 20-21.

#### 2.    Events from 2001 – the Bloomberg Mayoral Campaign

In 2001, Baughman was working in New York City on then-mayoral-candidate Michael Bloomberg's campaign. Id. ¶ 5. Beter was hired as a freelance photographer, on a one-time basis, by the Bloomberg campaign to provide a limited number of photos to be used in the direct-mail effort. Id. Baughman and Beter worked together for approximately three hours one afternoon in late September 2001. Id. ¶ 6. They were in public the entire afternoon and never alone, constantly surrounded by other campaign staffers and consultants, including Bloomberg himself.

Id. Following this one-time occasion, Baughman never saw Beter again. Id. Their interaction was brief and strictly professional. Id.

Shortly thereafter, Beter sent an invoice to Baughman and was paid an above-market rate for her time and the photos she took. Id. ¶ 7. In total, Beter contributed approximately 80 photos, of which three to five photos were actually used by Baughman on behalf of the Bloomberg campaign. Id.

After Bloomberg won his mayoral campaign, Beter demanded an additional $250,000 from Baughman, alleging that Baughman's direct-mail campaign included her photographs without her permission. Id. ¶ 8. Beter went on to make several more demands for compensation over the following years, at one point demanding in excess of $1 million. Id. ¶ 9. Baughman never responded to these requests. Id. ¶ 46.

3.      2005 – 2012 – Defendants' Allegations of a 2001 Sexual Assault

Beter's first mention of the alleged sexual assault came in an October 31, 2005 "cease and desist letter" sent by a Minnesota attorney to Baughman and to Bloomberg campaign manager Kevin Sheekey. Id. ¶ 47. The letter stated:

> Although I am advised that my client was severely traumatized as a result of having been sexually assaulted on two occasions in September, 2001, she is quite certain in her memory that she did not grant your company, Mayor Bloomberg or his campaign the right to use her photographs of Mayor Bloomberg outside the 2001 campaign.

Id.

In a March 14, 2007 email to Sheekey and deputy mayor Patti Harris, shortly after Baughman was hired to work on Hilary Clinton's 2006 campaign for Senate, Beter wrote "[I] know you would have told [Hilary Clinton's] team that knew from experience that [B]aughman was radioactive and a pervert." Id. ¶ 51.

3

In 2008, Baughman was hired to work on Clinton's presidential campaign. Id. ¶ 52. On July 29, 2008, Josee Beter forwarded an email to Harold Ickes, the former White House Deputy Chief of Staff for President Clinton, which was also apparently sent to eleven other high-ranking individuals in the Democratic Party and Senator Clinton's campaign staff, about the Clinton campaign's hiring of Baughman. Id. ¶ 53. The email stated, "[y]esterday I was deeply disturbed to learn that Duane Baughman, a man known to Mark Penn, Doug Schoen and Ed Skyler as having sexually assaulted my sister, was hired by Penn to work on Senator Clinton's presidential campaign[.]" Id. ¶ 53(a). The email then referred to Plaintiff Baughman as "politically toxic, swastika wielding, serial sexual pervert Duane Baughman" and "a man known for his abuse of women." Id. ¶¶ 53(c)-(d).

On August 1, 2008, Josee Beter forwarded this email to Baughman, stating "FYI – I sent this letter to Harold Ickes, Geoff Garin, Ed Syler, Mayor Bloomberg and multiple other people and oddly […] no one came to your defense." Id. at ¶ 55(a). She added "Baughman, I have not forgotten what you did to my sister and its [sic] a disgrace that everyone involved keeps pretending that this didn't happen." Id. ¶ 55(b).

These 2008 emails ultimately resulted in a federal investigation into Defendants. Id. ¶ 58. In August 2012, the New York Post published an article noting the federal investigation and Defendants' new allegations that the assault took place "in a kitchen area at Bloomberg's campaign headquarters in Midtown" and that "Bloomberg's former right-hand man, Ed Skyler… witnessed the incident and did nothing."  Id. ¶ 60.

4.    Beter's 2017 Lawsuit

In 2017, Beter filed a lawsuit in the Southern District of New York (Case No. 17-10247) against Rupert Murdoch and others (not including Baughman, who was unaware of the suit

during its pendency). Id. ¶ 64. Beter's complaint alleged that Baughman sexually assaulted her at the Bloomberg campaign headquarters on September 14, 2001, and engaged in other sexual misconduct incidents while working on the Bloomberg campaign, and that the Bloomberg campaign covered up these incidents. Id. This case was ultimately dismissed. Id.

5.       Josee Beter's 2018 Allegations of a 2001 Assault of Her Sister

On October 15, 2018, Josee Beter contacted Ruth Bernstein at EMC Research, a vendor to the Fight Back California Super PAC co-founded by Merrill. Id. ¶ 66. The email again alleged that Baughman had sexually assaulted Petra Beter and included further allegations of cyberstalking and threating physical harm against Beter. Id. ¶ 67.

6.       Beter's 2020 Allegations of a 2001 Sexual Assault

In or around February 2020, when Beter learned that Merrill was working as a consultant on Tom Steyer's 2020 presidential campaign, she contacted the COO of the Steyer campaign, Chris Fadeff, and again falsely claimed that Baughman had sexually assaulted her. Id. ¶ 68. This was done in an apparent effort to get Merrill fired. Id.

7.       Loss of the SKDK Opportunity

In or around July 2020, Merrill was contacted by a former colleague, Karen Olick, who was working at the political consulting firm SKDK in Washington, D.C., because SKDK was pitching the California Secretary of State on a new contract for a California state-wide voting program. Id. ¶ 69. Olick said she wanted to add Merrill to the pitch given Merrill's knowledge and experience as a political consultant in California. Id. Merrill fully intended to work with SKDK, and the collaboration likely would have yielded a profit of at least $1,000,000 for Plaintiffs. Id. However, shortly after this initial discussion, Merrill got a call from Olick

explaining that they were going in a different direction and that there was a rumor going around

that Merrill's business partner (Baughman) had previously sexually assaulted someone. Id.

       8.     Beter's 2023 Allegations of a 2001 Sexual Assault

In 2023, Merrill was retained to work on Congresswoman Barbara Lee's campaign for

U.S. Senate in California as the Chief Strategist and Spokeswoman. Id. ¶ 72. On March 28, 2023,

Beter emailed Janica Kyriacopoulos, a team member for the Lee campaign, writing in part:

> When I was 27 years old Duane Baughman assaulted me in an empty campaign office in New York City. He was 50 years old and I was working under him on a campaign for Mayor. For years, Ms. Merrill has known what he did to me on that day and about his history of sexual misconduct with other women yet she continues to work alongside him and provide cover for him…
>
> When I came forward to the campaign three days later I was told that I would be fired if I told anyone what had happened, "don't tell anyone about this you do want to keeping working (on the campaign) don't you?" and then they said that Baughman had harassed another woman on the campaign, a Hispanic woman, and when she complained they "had to get rid of her." Years later I learned that this in fact happened and the woman, a receptionist on the campaign, was fired.
>
> For many years following the assault I was told and then later threatened to keep quiet. It is important for me to tell you that in all of these years my account has never changed and I have never asked anyone for anything - only that Baughman not be allowed to work on anymore Democratic campaigns and yet he continued to be hired by high level people in the party.
>
> In 2008 after I learned that Baughman had worked on Senator Clinton's first Presidential Campaign I began to speak out to members of the Democratic Party about what he had done to me. In response Duane Baughman began threatening me in a number of disturbing ways, sending me threats of physical harm which I then provided to a political reporter and his editor at the New York Times, some in real time…
>
> Duane Baughman's misconduct is known at the highest levels of the Democratic Party. After working on Senator Clinton's Presidential run Baughman fell off the map and became a pariah in the party because I had begun telling people what he had done to me and people believed me, and then other women began coming forward. That is why his resume is so sparse following Senator Clinton's first Presidential Campaign.

But in 2017 Katie Merrill enabled him to make his return to the Party, offering him a lifeline by joining forces with him in their newly created partnership firm Baughman Merrill with Baughman working in the background and Merrill standing out front.

In January 2020 I learned that Katie Merrill was working on Tom Steyer's Campaign for President, work that is today being promoted on the Baughman Merrill website. When I informed the Steyer campaign near the end of their run of what Baughman had done to me and Ms. Merrill's role in fronting for him they believed me and immediately took action. The lawyer for the Steyer campaign apologized to me on behalf of the campaign and called Baughman "a criminal." …

I am writing to inform you of this and ask that you not allow Ms. Merrill to be part of this historic campaign. Her dishonesty and lack of judgment make her unfit to speak for Congresswoman Lee….

Id. ¶ 73.

Ms. Kyriacopoulos forwarded Beter's email to Joyce Kazadi, Congresswoman Lee's Chief of Staff, who forwarded the email to Plaintiff Merrill. Id. ¶ 76. Beter sent several follow-up emails to Ms. Kyriacopoulos and to the Lee campaign official press email address. Id. ¶ 77. In part, Beter stated, "I only ask that Ms. Merrill not be allowed to work on the campaign. She should not be rewarded and trusted with such an important job[.]" Id.

Beter sent a fourth email to Kyriacopoulos and the Lee campaign press email on April 14, 2023. Id. ¶ 78. In addition to voicing frustration at being ignored, she (a) speculated that Merrill had access to the Lee campaign press email and had deleted Beter's messages; (b) requested contact information for Congressman Ro Khanna, who she stated was Chair of Congresswoman Lee's campaign; and (c) forwarded a purported August 20, 2020 email from Chris Fadeff (COO of the Steyer campaign). Id. The purported email conveyed how seriously the Steyer campaign took Beter's allegations and stated that the campaign "terminated their relationship with Katie Merrill." Id. However, Fadeff has no record of this email ever being written and has no recollection or record of this email ever being sent. Id. Neither Fadeff nor anyone from the

7

Steyer campaign ever terminated their relationship with Merrill and the email did not come from Fadeff. Id.

These emails with Congresswoman Lee's staff have caused serious problems in Plaintiffs' business, including but not limited to, impeding the Merrill Group's ability to efficiently do the job required of them and provide the expected level of service.  Id. ¶ 79.

On April 14, 2023, Beter sent an email to Marie Baldassarre, Congressman Khanna's Communications Advisor and Chief of Staff, alleging "troubling issues with Katie Merrill and her business partner Duane Baughman who assaulted me when I was 27 years old and he was 50 years old." Id. ¶ 81. She also reiterated that "Ms. Merrill should not work in any capacity on Congresswoman Lee's historic campaign" and that "Congresswoman Lee would not approve of Ms. Merrill's protection of her business partner Duane Baughman which has enabled him to receive millions of dollars in donor funds despite his well known history of sexual violence against women." Id. Beter also forwarded copies of the March 28, 2023 email she wrote to Ms. Kyriacopoulos and the August 20, 2020 email purportedly from Fadeff. Id.

 On April 14, 2023, Beter forwarded her email to Congressman Khanna's Deputy Communications Director. Id. ¶ 82. On April 18, 2023, Beter emailed Congressman Khanna's Chief of Staff and stated "I would like to know if Katie Merrill and Duane Baughman are being kept on Congresswoman Lee's campaign for Senate and if they are receiving any donor funds which I object to in the strongest terms. Id. ¶ 83. She also offered to provide details of "Duane Baughman's assault on me and the overwhelming harm he caused me." Id.

B.      *Plaintiffs' Causes of Action*

Count I alleges defamation and defamation *per se* against Beter for her March 28, 2023 email to Janica Kyriacopoulos, which Beter allegedly forwarded to numerous other individuals, and her April 14, 2023, and April 18, 2023 emails to Baldassarre.

As to the March 28, 2023 email, Plaintiffs assert that the statements therein are false and defamatory for the following reasons: Baughman never assaulted Beter or any other woman; Baughman was never in the campaign office with Beter (and did not have independent access to the office); Baughman was 36 years old in 2001, not 50; Beter did not work "under" Baughman on the campaign; no one on the campaign threatened to "fire" Beter because she did not work on the campaign—she was hired as a freelance photographer for a single-day photoshoot; no one at the campaign ever told Beter that Baughman had harassed another woman who was subsequently fired, because Baughman never harassed another woman; Baughman never threatened Beter; Baughman has never communicated with Beter outside of that one afternoon in September 2001, and all of their interactions that day were strictly professional; and Merrill has never covered up Baughman's "history of sexual misconduct" because there is nothing to cover up. Id. ¶ 74.

Count II alleges tortious interference with a prospective business advantage against both Defendants regarding Plaintiffs' contemplated contract with SKDK in July 2020.

Count III alleges tortious interference with a contractual relationship against Beter for her alleged efforts to get Plaintiffs terminated from Congresswoman Lee's campaign.

Count IV alleges civil conspiracy against both Defendants for conspiring to publish and republish defamatory allegations against Plaintiff Baughman.

## II.     Procedural Background

On November 3, 2023, Plaintiffs filed a Motion for Alternative Service [Doc. No. 13], detailing the difficulties in serving Defendants. On November 21, 2023, the court granted the motion in part, extending the deadline to personally serve the Defendants. [Doc. No. 14].

Meanwhile, on November 20, 2023, Beter filed an action against Baughman and two others in state court in New York, alleging that she was sexually assaulted in September 2001. See Beter Complaint, Ex. B to Mem. ISO Mot. to Strike [Doc. No. 34-2]. That case was removed to the Southern District of New York. Beter v. Baughman, et al., 1:24-cv-00079-GHW-RFT (S.D.N.Y. 2024).

On January 24, 2024, Defendants waived service of the summons here. [Doc. Nos. 16, 17]. On April 1, 2024, Defendants filed the Motion to Strike [Doc. No. 31]. In support, Defendants filed a Memorandum [Doc. No. 32] and a copy of Beter's unverified complaint in the later-filed New York case [Doc. No. 32-2]. Defendants also filed their Motion to Stay and Motion to Dismiss [Doc. No. 33]. Plaintiffs filed Oppositions [Doc. Nos. 47, 49] and, in opposition to the Motion to Strike, Baughman's and Merrill's Declarations [Doc. Nos. 45, 46] (with exhibits).

## III.    Defendants' Motion to Strike

### A.   *California and Massachusetts' Anti-SLAPP Laws*

Defendants assert rights under Anti-Strategic Lawsuit Against Public Participation ("anti-SLAPP") statutes in California (where Plaintiffs reside), or in the alternative, in Massachusetts (where Defendant Beter purportedly resides). See Cal. Civ. Proc. Code § 425.16(b)(1); M.G.L. c. 231, § 59H.

California's Anti-SLAPP scheme provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech

under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1). In ruling on an Anti-SLAPP motion pursuant to California law, courts follow a two-step process. Equilon Enterprises v. Consumer Cause, Inc., 29 Cal. 4th 53, 67, 52 P.3d 685 (2002). "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." Id. This requires the movant to demonstrate that the acts at issue were taken "in furtherance of the person's right of petition or free speech… in connection with a public issue," as defined in § 425.16(e). That section defines such an act to include:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Civ. Proc. Code § 425.16(e). Under this statute, if the court finds such a showing has been made, then at the second step, the court "determines whether the plaintiff has demonstrated a probability of prevailing on the claim." Equilon, 29 Cal. 4th at 67.

The Massachusetts Anti-SLAPP statute allows parties to bring a special motion to strike where they "assert[] that the civil claims, counterclaims, or cross claims against said party are based on said party's exercise of its right of petition under the constitution of the United States or of the commonwealth." M.G.L. c.231, § 59H. Unlike California's Anti-SLAPP scheme, which protects acts taken in furtherance of "the right of petition *or* free speech," Cal. Civ. Proc. Code § 425.16(b)(1) (emphasis added), the Massachusetts statute clearly limits its protections

exclusively to the "right of petition." See also Bristol Asphalt, Co. v. Rochester Bituminous Prod., Inc., 493 Mass. 539, 541, 227 N.E.3d 1019 (2024) ("Although these powerful procedural protections were designed to target meritless suits brought to discourage individuals from exercising their constitutional right of petition, the statute has been regularly invoked in attempts to dismiss a wide array of other claims concerning conduct far afield of the petitioning activity that the Legislature originally sought to protect. To align the statutory language and purpose, and address its potential misapplication, . . . we adopted a construction of the anti-SLAPP statute that would exclude its applicability to claims with a substantial basis other than or in addition to an individual's exercise of the right of petition.") (citing Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. 156, 167-68, 691 N.E.2d 935 (1998)).

Where a party asserts under Massachusetts' anti-SLAPP statute that claims are based on the party's exercise of its right of petition under the Constitution of the United States or of the Commonwealth, the party bringing the claim must show "that: (1) the moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving party's acts caused actual injury to the responding party." See M.G.L. c. 231, § 59H. Here, "a proponent of a special motion . . . must make a threshold showing through the pleadings and affidavits that the claims against it are 'based on' the party's petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities." See Bristol Asphalt, Co., 493 Mass. At 555. If the proponent cannot make the requisite threshold showing, the special motion to dismiss is denied." See id.

B. *Choice of Law*

When resolving disagreements about which state's law applies, the court sitting in diversity employs the substantive law of the forum state, including its choice-of-law principles.

See Cheng v. Neumann, 106 F.4th 19, 25 (1st Cir. 2024). Massachusetts courts resolve choice-of-law questions "by assessing various choice-influencing considerations," including those outlined in the Restatement (Second) of Conflict of Laws (1971). Bushkin Assocs., Inc. v. Raytheon Co., 393 Mass. 622, 668-69, 473 N.E.2d 662 (1985). "Factors under § 6 [of the Restatement] that are said to be relevant to the choice of the applicable rule of law include: '(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.'" Id. at 669.

The parties cite district court decisions taking opposing positions on the issue of which state's choice of law to apply here. Compare Ayyadurai v. Floor64, Inc., 270 F. Supp. 3d 343, 354 (D. Mass. 2017) (applying Massachusetts Anti-SLAPP law because defendants, California citizens, did not overcome the presumption that the law of plaintiff's home state should prevail), with O'Gara v. Binkley, 384 F. Supp. 3d 674, 682-83 (N.D. Tex. 2019) ("[A]pplying California's anti-SLAPP statute to a Texas defendant would impede on Texas's interest in protecting its citizens and fulfilling the statute's purpose in a similar way that applying Texas's defamation law to a California plaintiff would infringe on California's interests."); Underground Sols., Inc. v. Palermo, 41 F. Supp. 3d 720 (N.D. Ill. 2014) (finding that defendant's domicile had "the clearest interest in applying its anti-SLAPP law vis-à-vis one of its own citizens").

The First Circuit has, however, suggested that resolution of a choice-of-law question at the dismissal stage where facts relevant to that inquiry are disputed is improper. See Foisie v. Worcester Polytechnic Inst., 967 F.3d 27, 42-43 (1st Cir. 2020). "[W]e emphasize that the

optimal timing for a choice-of-law determination is case-specific," but where "the complaint itself leaves unanswered questions about critical aspects of the pertinent facts . . . a district court is well-advised to refrain from making an immediate choice-of-law determination." Id. at 42. Here, the factual record is undeveloped. While Plaintiffs allege their belief that Beter is a resident of Massachusetts and Josee Beter is a citizen of Minnesota, Defendants are silent as to their residences in the briefing. The factual record is also silent as to whether Beter sent the allegedly defamatory emails from Massachusetts and where the recipients of the emails were located. A more developed factual record will contain information about where the allegedly defamatory emails were sent, where they were received and read, and who, if anyone, they were forwarded to. The court will then be able to conduct a full § 6 analysis to determine which state's law applies to these claims.

The court considers instead whether the choice of law would result in different results here and proceeds to analyze Plaintiffs' motion to strike under both statutes.

C.    *Defendants' Petitioning Activity*

Both state's anti-SLAPP statutes protect petitioning activity, and Defendants point for petitioning activity here to Beter's 2012 reports to the FBI and her 2017 lawsuit. But while this background is set forth in the Complaint, it is not a basis for the causes of action against Beter, let alone the sole basis. Instead, Defendants' claims against Beter are directed to her more recent emails and communications. Accordingly, Beter has failed to make the initial showing under either statute based on her petitioning activity.

Josee Beter's claim for protection based on petitioning activity is even weaker. The Complaint includes no allegations of petitioning activity by Josee Beter, and Josee Beter makes no showing that she engaged in any petitioning activity.

In sum, to the extent that the Motion to Strike is made under Massachusetts' Anti-SLAPP statute or California's Anti-SLAPP statute as it relates to petitioning activity, the motion fails at step one of the analysis.

D.    *Defendants' Other Communications*

As discussed above, California's anti-SLAPP statute does afford protection to constitutionally protected free speech that does not constitute petitioning activity. But moving parties must still make a showing that they engaged in such activities. See Bonni v. St. Joseph Health Sys., 11 Cal.5th 995, 1009, 491 P.3d 1058 (2021).

Defendants do not deny that they sent the emails attached to Plaintiffs' Complaint. Instead, they claim that their speech was made in a public forum or otherwise in furtherance of their exercise of free speech in connection with an issue of public interest, and therefore is protected. But regardless of whether the speech was made in a public forum or in connection with an issue of public interest (both of which Plaintiffs dispute), even in those contexts not all speech is protected by the First Amendment. Libelous statements made with malice and false statements that intentionally interfere with contracts and with prospective business relations are not protected. See Gertz v. Robert Welch, Inc., 418 U.S. 323, 339-40 (1974). Accordingly, at step one, Defendants needed to make a threshold showing that the alleged statements are not actionable. See Baral v. Schnitt, 1 Cal.5th 376, 389, 376 P.3d 603 (2016). The Defendants have failed to do.

Notably, Defendants have not supported their motion with Declarations stating  that the emails and other communications claiming that Baughman sexually assaulted Beter are true. Instead, Defendants have offered only the unverified complaint in the later-filed New York

action and the arguments of counsel. The court finds this showing wholly insufficient at step one of the anti-SLAPP procedure.

Having failed to make the requisite showing, the court need not consider the step two evidence submitted by Defendants. The court notes, however, that Baughman's Declaration denying that he sexually assaulted Beter is not rebutted by any evidence in the record before the court.

The Motion to Strike, whether brought under California or Massachusetts law, is DENIED.

## IV.    Defendants' Motion to Stay Litigation

Defendants move to stay litigation in the instant case pending the outcome of the action brought by Defendant Beter against Plaintiff Baughman in the Southern District of New York (the "New York action").[1] Plaintiffs oppose.

Beter alleges in the New York action that Baughman sexually assaulted her in 2001. Baughman alleges here that Beter's claims that she was assaulted are false and defamatory. Accordingly, there are overlapping issues in the two actions. The New York action was filed five months after the present action, however, and based on the timing, appears to be a response to the present action. See Beter Complaint, Ex. B to Mem. ISO Mot. to Strike [Doc. No. 34-2].

The First Circuit has recognized that "[o]bvious concerns arise when actions involving the same parties and similar subject matter are pending in different federal district courts: wasted resources because of piecemeal litigation, the possibility of conflicting judgments, and a general concern that the courts may unduly interfere with each other's affairs." TPM Holdings, Inc. v.

---

[1] Beter v. Baughman et al, 1:24-cv-00079-GHW-RFT (S.D.N.Y. 2024).

Intra-Gold Indus., Inc., 91 F.3d 1, 4 (1st Cir. 1996). In resolving these conflicts, "courts rely primarily on common sense and historical practice." Id. Under the "first-to-file" rule, "[w]here the overlap between the two suits is nearly complete, the usual practice is for the court that first had jurisdiction to resolve the issues and the other court to defer." Id.

It is true that the "first-to-file" rule is "not to be applied in a 'mechanical way.'" Thakkar v. United States, 389 F. Supp. 3d 160, 170 (D. Mass. 2019) (citing ECM Corp. v. Parallel Iron, LLC, 914 F. Supp. 2d 125, 127 (D. Mass. 2012)). "'Exceptions to the rule are not rare,'… and courts have 'discretion to give preference to a later-filed action when the action will better serve the interests involved.'" Id.  However, the court sees no reason to depart from the traditional "first-to-file" rule in this case.

Defendants claim that allowing the S.D.N.Y. action to proceed first and determine the merits of Beter's sexual assault claim would be more convenient for the parties. But Plaintiffs are raising claims concerning purported actions by the Defendants that are interfering with their present business. Staying this action while Beter litigates a claim that she could have brought two decades earlier would not provide any convenience to Plaintiffs, and instead would delay resolution of their claims. Convenience can be obtained by the parties in both actions voluntarily coordinating discovery.

Defendants also argue that staying the present action would reduce the risk of conflicting judgments. They assert that if the New York action resolves in Beter's favor, claim preclusion will prevent Plaintiffs in this action from re-litigating whether the alleged assault occurred. See Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 30 (1st Cir. 1994) ("The principle of ... issue preclusion, bars relitigation of any factual or legal issue that was actually decided in previous litigation …"). Defendants further contend that the outcome of the New York case could

simplify the issues in the present case, and that the court's failure to stay the present action could lead to contradictory results.

However, the court notes first that the parties to the litigation are not the same. While both Beter and Baughman are parties in both suits, the remaining Plaintiffs and Josee Beter are not parties to the New York action. Defendants, moreover, could have achieved the efficiencies they claim to seek by filing their action against Baughman as a counterclaim here. Moreover, Defendants were presented with an opportunity to transfer the present action to the Southern District of New York and chose instead to file the motion to stay. Mem. Opp'n Mot. Stay or Dismiss 8 [Doc. No. 49]. Either of these choices would have allowed Defendants to ensure both actions were adjudicated in the same district and reduced the risk of conflicting judgments. Faced with evidence of gamesmanship, the court rejects Defendants' argument that these same factors should cause this court to stay the present action.

Additionally, Plaintiffs assert that they will be prejudiced by the stay of this action because Merrill's claims will not be addressed in the New York action, and "Ms. Merrill would be highly prejudiced by having this case stayed for an indefinite period of time while Ms. Beter actively targets her and her employment opportunities." Mem. Opp'n Mot. Stay or Dismiss 6 [Doc. No. 49]. The court agrees that the outcome would not resolve Plaintiff Merrill's claims[2] and that Plaintiff Merrill would be prejudiced should the court stay this action pending the outcome of the New York case.

Accordingly, Defendants' Motion to Stay [Doc No. 33] the present action pending the outcome of the New York action is DENIED.

---

[2] Defendants' contrary assertion that an outcome in their favor in the New York action would be entitled to collateral estoppel against non-parties is puzzling.

**V.      Defendants' Motion to Dismiss**

Defendants contend that California law applies and asks the court to dismiss each of Plaintiffs' claims as a matter of law.

For the following reasons, the court grants the motion as to Counts Two and Count Four (thereby dismissing all claims as to Josee Beter) and denies the motion as to Counts One and Three (which are asserted against Beter only).

A.  *Defamation and Defamation Per Se Against Beter (Count I)*

Defendants ask the court to dismiss Plaintiffs' defamation and defamation *per se* claim, arguing that (1) it is time-barred, (2) Plaintiffs are public figures but have failed to allege actual malice, and (3) Plaintiffs have failed to allege any actual or contractual loss proximately caused by the alleged defamation.

The court cannot conduct a choice-of-law analysis at this stage, see supra section III.B., and instead considers the motion to dismiss under both California and Massachusetts law, reaching the same result under either statute.

1.  Statute of Limitations

Under either California or Massachusetts law, Plaintiffs' defamation claim is not time-barred. California's statute of limitations for defamation is one year. Cal. Civ. Proc. Code § 340. Massachusetts has a three-year statute of limitations for defamation. M.G.L. c. 260, § 4. Because Plaintiffs' defamation claim (Count I) is based on emails sent by Beter in March and April of 2023, less than a year before the filing of this action in June of 2023, Count I is not time-barred in either jurisdiction.

2.   Actual Malice

Defendants assert that Plaintiffs are public figures and were therefore required to plead actual malice under New York Times Co. v. Sullivan, 376 U.S. 254 (1964). The court disagrees and finds that Plaintiffs are not public figures and accordingly Defendants are not entitled to the protection of the "actual malice" standard. The court finds further that Plaintiffs have pled actual malice.

In Gertz, 418 U.S. at 351, the Supreme Court identified two distinct categories of public figures. The first is an "all purpose" public figure, who "achieve[s] such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts." Id. at 351. The second is a "limited" public figure, who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." Id. "That 'limited range of issues' is identified 'by looking to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation.'" Lluberes v. Uncommon Prods., LLC, 663 F.3d 6, 13 (1st Cir. 2011) (quoting Gertz, 418 U.S. at 352). If a plaintiff has "attempted to 'influence the resolution' of that controversy," the plaintiff is considered a limited public figure "and bears the heavy, and often insurmountable, burden of proving actual malice." Lluberes, 663 F.3d at 14. The controversy at issue must predate the alleged defamation. See id.

Plaintiffs Merrill and Baughman are not "all purpose" public figures. Though Plaintiffs are successful in the political industry, their work is behind the scenes, and Plaintiffs have not attained notoriety or influence among the general public. See Gertz, 418 U.S. at 352 ("We would not lightly assume that a citizen's participation in community and professional affairs rendered him a public figure for all purposes.")

20

Neither are Plaintiffs "limited" public figures. The purported "controversy" at issue in Plaintiffs' defamation claim is the alleged sexual assault of Beter. Defendants have not met their burden of establishing that Plaintiffs have attempted to "influence the resolution" of this conflict beyond filing the instant lawsuit. While Defendants direct the court to two news articles reporting on Beter's New York action against Baughman, Mem. ISO Mot. Stay or Dismiss 21 [Doc. No. 34], the reporting on Defendants lawsuit does not establish Plaintiffs as public figures. Hutchinson v. Proxmire, 443 U.S. 111, 112–13 (1979) ("Those charged with alleged defamation cannot, by their own conduct, create their own defense by making the claimant a public figure."). Accordingly, Plaintiffs were not required to plead actual malice.

But even if Plaintiffs were required to plead actual malice, their allegations here are sufficient. Defamation and Defamation per se is only asserted against Beter, who Plaintiffs allege is falsely claiming that she was sexually assaulted. If, as Plaintiffs contend, these allegations are fabricated, Beter (who was an adult at the time she allegedly was assaulted) would have actual knowledge that the statements are false.

3.    Economic Loss

Additionally, Defendants assert that Plaintiffs' claim is deficient for "fail[ing] to allege any actual or contractual loss proximately caused by [Defendants] beyond mere conclusory statements." Mem. ISO Mot. Strike or Dismiss 24 [Doc. No. 34]. But Plaintiffs' Complaint [Doc. No. 1] contends that the allegedly defamatory emails at issue in Count I are defamatory *per se* because they accuse Plaintiff Baughman of the crime of sexual assault and prejudice Plaintiffs' businesses and careers, a claim that does not require proof of economic loss. Lionbridge Technologies, LLC v. Valley Forge Ins. Co., 53 F.4th 711, 721 (1st Cir. 2022).

Under Massachusetts law "the imputation of a crime is defamatory per se, requiring no proof of special damages" as an element of the claim. Phelan v. May Dep't Stores Co., 443 Mass. 52, 56, 819 N.E.2d 550 (2004); see also Ravnikar v. Bogojavlensky, 438 Mass. 627, 630 782 N.E.2d 508 (2003) (holding that "statements that charge the plaintiff with a crime" are "actionable without proof of economic loss"). Because Defendants' emails accuse Baughman of the crime of sexual assault, Plaintiffs have sufficiently pleaded their defamation claim against Beter and Defendants' Motion to Dismiss [Doc. No. 33] is denied as to Count I.

 B. *Tortious Interference with Contractual Relationship (Count III) Against Beter*

Defendants assert that Plaintiffs' claim of tortious interference with contractual relationship has not been properly pleaded under either California or Massachusetts law.

Under California law, "[t]he elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." Pac. Gas & Elec. Co. v. Bear Stearns & Co., 50 Cal. 3d 1118, 1126, 791 P.2d 587 (1990).

Defendants assert that Plaintiffs have failed to plead elements (4) or (5) of this claim by failing to allege "that the Merrill Group's contract with Congresswoman Lee was breached or disrupted or there was resulting damage," Mem. ISO Mot. Strike or Dismiss 19 [Doc. No. 34]. Drawing all reasonable inferences in the light most favorable to Plaintiffs, the court rejects this argument. Plaintiffs assert that Defendant Beter's allegedly defamatory emails to the Lee campaign caused them to suffer damages "in an amount to be proven at trial but believed to be in excess of $10,000,00," Complaint ¶ 102 [Doc. No. 1], and that Beter's 2023 emails "caused

serious problems in Plaintiffs' business, including but not limited to, impeding the Merrill Group's ability to efficiently do the job required of them, and provide the level of service as expected," id. ¶ 79. Accordingly, Plaintiffs have properly pleaded breach or disruption of their contractual relationship and resulting damages under California law.

The Massachusetts standard for tortious interference with contractual relationship requires a plaintiff to prove "that (1) he had an advantageous relationship with a third party (e.g., a present or prospective contract or employment relationship); (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." Blackstone v. Cashman, 448 Mass. 255, 260, 860 N.E.2d 7 (2007). The only meaningful difference between these two standards is the additional "improper in motive or means" requirement of the defendant's interference. Taking all of Plaintiffs' factual allegations as true, this standard is certainly met if Beter was knowingly lying to the campaign that contracted for Plaintiffs' services about the commission of a sexual assault.

Accordingly, Defendants' Motion to Dismiss [Doc. No. 33] is denied as to Count III.

C.   *Tortious Interference with Prospective Business Advantage (Count II) Against Both Defendants*

Defendants assert that Plaintiffs' claim of tortious interference with prospective business advantage has not been properly pleaded under California law. Plaintiffs allege that either Massachusetts or Washington, D.C. law applies to this claim and that, under either standard, their claim has been sufficiently plead.

The court finds that Plaintiffs fail to properly plead a claim of tortious interference with prospective business advantage under any standard. Each relevant variation of tortious interference with prospective business advantage requires Plaintiffs to prove that Defendants

knew of their potential business relationship in 2020 with SKDK and (2) intentionally acted to disrupt it.[3] There are no well pleaded facts before the court to suggest that either of these requirements was met.

Plaintiffs' allegations regarding the loss of the SKDK opportunity make no allegation of Defendants' direct involvement. First, Plaintiffs do not allege that Defendants knew Merrill had been invited to work on a pitch with SKDK and offer no reason for the court to draw that inference where Plaintiffs were released from this potential partnership only "shortly after" being invited to participate. Compl. ¶ 69 [Doc. No. 1]. Plaintiffs similarly do not allege that Defendants contacted SKDK directly. Instead, Plaintiffs allege only that they were told of "rumors" that Baughman had sexually assaulted someone and that SKDK had called other high-ranking members of the Democratic Party to see if anyone else had heard the rumors. Id. In light of the earlier republications of Beter's allegations, including the 2012 New York Post article describing Beter's allegations, which could be the start of the rumors, the court cannot infer that the

---

[3] See Golden Eagle Land Inv., L.P. v. Rancho Santa Fe Assn., 19 Cal. App. 5th 399, 429, 227 Cal. Rptr. 3d 903 (2018) ("For intentional interference, the plaintiff must plead and prove: '(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship…(4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.'") (internal citations omitted); Powers v. Leno, 24 Mass. App. Ct. 381, 384-85, 509 N.E.2d 46 (1987) ("The elements of the tort of interference with an advantageous relationship that a plaintiff must prove are '(1) a business relationship or contemplated contract of economic benefit; (2) the defendant's knowledge of such relationship; (3) the defendant's intentional and malicious interference with it; (4) the plaintiff's loss of advantage directly resulting from the defendant's conduct.'") (citations omitted); Jankovic v. Int'l Crisis Grp., 593 F.3d 22, 29 (D.C. Cir. 2010) ("[A] plaintiff must plead, as necessary elements for a claim for intentional interference with business expectancy under District of Columbia law: '(1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage.'").

"rumors" are based on new, actionable communications by Defendants directed at Plaintiffs' prospective business relationship with SKDK. Id. ¶ 60.[4]

Defendants' Motion to Dismiss [Doc. No. 33] is granted as to Count II.

D.      *Civil Conspiracy (Count IV) Against Both Defendants*

The parties agree that Massachusetts law applies to Plaintiffs' civil conspiracy claim. The court finds that Plaintiffs have not properly pleaded a claim of civil conspiracy under Massachusetts law.

To state a claim for civil conspiracy, "a plaintiff must demonstrate that a combination of persons acted pursuant to an agreement to injure the plaintiff." Gutierrez v. Mass. Bay Transp. Auth., 437 Mass. 396, 415, 772 N.E.2d 552 (2002). "It is not sufficient to prove joint tortious acts of two or more persons;" rather, the plaintiff must demonstrate that the participants acted pursuant to an agreement. Id.

Plaintiffs have provided no plausible basis for their allegation that Defendants "conspired together to publish and republish the defamatory allegations that Baughman sexually assaulted and threatened physical harm" to Beter and that "Defendants then conspired to republish those same defamatory allegations to other third parties in the ensuing years, including 2020 and 2023." Compl. ¶¶ 104, 107 [Doc. No. 1]. Plaintiffs have provided no factual allegations as to Josee Beter's purported involvement in publishing Beter's allegedly defamatory statements in 2020 or 2023. Additionally, they have failed to provide any plausible allegation that the two were operating under an agreement at this time. The mere assertion that the two were acting in

---

[4] Defendants also assert that this Count is time-barred under California's two statute of limitations, while Plaintiffs contend that the Count is not time-barred under Massachusetts or D.C. three-year statute of limitations. The court does not need to reach this issue where the claim is being dismissed on other grounds.

concert is a "threadbare recital ... supported by mere conclusory statements" that does not satisfy the plausibility standard for pleadings. See Ashcroft v. Iqbal, 556 U.S. 662, 678.

Plaintiffs assert that actual agreement is not an absolute requirement of Massachusetts law, which recognizes a second form of conspiracy based on § 876 of the Restatement (Second) of Torts. See Kurker v. Hill, 44 Mass. App. Ct. 184, 188, 689 N.E.2d 833 (1998). "In Massachusetts, civil conspiracy may take the form of 'concerted action,' whereby liability is imposed on one individual for the tort of another." Thomas v. Harrington, 909 F.3d 483, 490 (1st Cir. 2018) (citing Kurker, 44 Mass. App. Ct. at 188)). A "concerted action" conspiracy requires a plaintiff to prove "that defendants either (1) acted 'in concert with or pursuant to a common design with' the tortfeasor or (2) 'gave substantial assistance to' the tortfeasor's conduct." Thomas, 903 F.3d at 490. "Under the substantial assistance theory, a defendant is liable for the conduct of another if he 'knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself.'" Taylor v. Am. Chemistry Council, 576 F.3d 16, 35 (1st Cir. 2009).

However, Plaintiffs have similarly failed to plead a claim of civil conspiracy based on substantial assistance. Again, Plaintiffs have no factual allegations in their Complaint [Doc. No. 1] showing that Josee Beter provided any assistance to Beter in Beter's alleged publication of defamatory statements in 2020 or 2023. Plaintiffs can point to no conduct taken by Josee Beter beyond 2018, and even as to those, Josee Beter's allegedly defamatory emails at that time are entirely distinct from any of Beter's allegedly defamatory emails. Accordingly, Defendants' Motion to Dismiss [Doc. No. 33] is granted as to Count IV.

## VI.    Conclusion

For the foregoing reasons, Defendants' <u>Motion to Strike Plaintiffs' Complaint Pursuant to the California Anti-SLAPP Law</u> [Doc. No. 31] and <u>Motion to Stay Litigation</u> [Doc. No. 33] are DENIED. Defendants' <u>Motion to Dismiss</u> [Doc. No. 33] is GRANTED as to Counts II and IV and DENIED as to Counts I and III.

IT IS SO ORDERED

October 11, 2024                                  /s/Indira Talwani
                                                 United States District Judge